IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMERICAN BANK HOLDINGS, INC., : 
et al.                        :

    v.                        :    Civil Action No. DKC 09-2228

                              :

GRANGE MUTUAL CASUALTY CO.    :

                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract dispute is a motion filed by Defendant Grange Mutual Casualty Company to dismiss for lack of personal jurisdiction, for improper venue, or alternatively, to transfer to the United States District Court for the Southern District of Ohio. (Paper 8). Also pending is a motion filed by Plaintiffs American Bank Holdings, Inc., and American Bank to strike in part Defendant's reply, or alternatively, for leave to file a surreply. (Paper 11). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be denied.

## I.  Background

This case arises from a merger agreement between two banks. Prior to the merger, The Grange Bank ("Grange Bank"), a federally chartered savings bank in Ohio, was a wholly-owned subsidiary of Defendant Grange Mutual Casualty Company, an Ohio

corporation with its principal place of business in Ohio. In or around November 2006, Defendant resolved to sell Grange Bank and retained the services of an investment bank, Keefs, Bruyette & Woods, Inc. ("KBW"), to assist in finding a buyer. Later that month, KBW contacted James Plack, President and Chief Executive Officer of Plaintiff American Bank, to inquire as to American Bank's interest in purchasing Grange Bank. (Paper 9, Attach. 1, at ¶ 2). American Bank is a Maryland-based, wholly-owned subsidiary of Plaintiff American Bank Holdings, Inc., a Delaware corporation with its principal place of business in Maryland.

Shortly after initiating contact, KBW sent Mr. Plack a document entitled "Grange Bank Confidential Sales Memorandum," containing "selected information pertaining to the business and operations of Grange Bank." (Paper 9, Attach. 2, at 3). The stated purpose of the memorandum was to "assist [American Bank] in deciding whether to pursue a possible transaction with [Grange Bank]." (*Id.*). Mr. Plack and Grange consultant Michael McMennamin subsequently exchanged a series of phone calls and emails negotiating the terms of a proposal by American Bank. (Paper 9, Attach. 1, at ¶ 3). The end result of those communications was a formal letter of intent, dated January 5, 2007, by which American Bank proposed a "business transaction whereby it will purchase certain assets and assume certain

liabilities . . . from The Grange Bank." (Paper 9, Attach. 3, at 2).

On February 6, 2007, after further negotiations, the parties executed an "Agreement and Plan of Merger by and Among American Bank Holdings, Inc., American Bank, Grange Mutual Casualty Company and The Grange Bank" ("merger agreement"), which effected the merger of Grange Bank with American Bank, the surviving entity. (Paper 1, Attach. 2, 3). The agreement provided that Plaintiffs would purchase from Grange Bank a number of home equity lines of credit and commercial loans ("purchased loans"), which were to exclude non-performing loans and loans without security and collateral, as identified by an attached schedule. Plaintiffs further agreed to assume the deposit liabilities of Grange Bank and to indemnify Defendant from losses associated with those liabilities. Both parties agreed to take all necessary action, post-closing, to carry out the terms of the merger, to secure regulatory approval, and to transfer all data files associated with the purchased loans and assumed deposit liabilities from Ohio to Maryland.

After signing the agreement, the parties collaborated over the course of several months, primarily by telephone and email, to gain approval of the merger from the Office of Thrift Supervision of the Federal Deposit Insurance Corporation ("OTS"). At the closing of the merger agreement – which

occurred on June 29, 2007, in Ohio – Plaintiffs paid consideration for the purchased loans in an amount equal to the aggregate unpaid principal balance plus accrued interest on the loans, as valued at the time of closing. Plaintiffs acquired approximately $81 million in loan assets and assumed responsibility for approximately $154 million in deposit liabilities, resulting in the net transfer of approximately $80 million in deposit liabilities to American Bank in Maryland. Defendant also transferred at closing $86.5 million to American Bank in consideration of Plaintiffs' assumption of those liabilities. All of the records and files of Grange Bank were subsequently transferred to American Bank, where they are currently housed. As part of its post-closing obligations, American Bank provided a number of services, in Maryland, on Grange's behalf, including certain information technology services and preparation of reports in relation to compliance with IRS and OTS reporting requirements. Additionally, Defendant continued to make direct deposits of payroll and commissions owed its agents to deposit accounts at American Bank in Maryland.

A dispute subsequently arose between the parties regarding certain of the purchased loans, and on August 25, 2009, Plaintiffs filed a complaint in this court alleging breach of the merger agreement. (Paper 1). In response, Defendant moved

to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), for improper venue pursuant to Fed.R.Civ.P. 12(b)(3), or alternatively, to transfer to the Southern District of Ohio pursuant to 28 U.S.C. § 1406. (Paper 8). In its reply brief, Defendant asserted a novel claim that the case should be transferred pursuant to 28 U.S.C. § 1404 (paper 10, at 13-15), and Plaintiffs moved to strike this ground, or alternatively, for leave to file a surreply (paper 11).

## II. Motion to Dismiss

### A.  Personal Jurisdiction

Defendant moves to dismiss the complaint for lack of personal jurisdiction, arguing that it is not licensed to do business in Maryland, neither rents nor owns property there, and never sent representatives to Maryland throughout the negotiations that gave rise to the merger agreement. Consequently, according to Defendant, this court may not exercise personal jurisdiction over it. Plaintiffs contend that because Defendant initiated the business relationship between the parties, negotiated and executed an agreement contemplating the merger of Grange Bank into Maryland-based American Bank, and subsequently transferred all of Grange Bank's accounts to Maryland, there are extensive contacts supporting specific jurisdiction in this court.

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V*., 2 F.3d 56, 59-60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan Labs*., 2 F.3d at 60. In determining whether the plaintiff has established a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs*., 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction" over the defendant. *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A court may exercise general jurisdiction, by contrast, where a defendant maintains "continuous and systematic" contact with the forum state. *Helicopteros*, 466 U.S. at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)). Here, Plaintiffs assert that this court may exercise specific jurisdiction insofar as the alleged breach of the parties' merger agreement arises from Defendant's contacts with Maryland.

A federal district court may exercise specific personal jurisdiction over a nonresident defendant if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause

of the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).  Because it limits specific jurisdiction to cases in which the cause of action "aris[es] from any act enumerated," however, a plaintiff relying upon the long-arm statute must still "'identify a specific Maryland statutory provision authorizing jurisdiction.'"  *Johansson Corp.*, 304 F.Supp.2d at 704 (quoting *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001)).  Plaintiffs here rely on Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), which confers personal jurisdiction over a corporation that "transacts any business" in the state.

In the constitutional analysis, the crucial issue is whether the defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia,* 466 U.S. at 414).  Where a nonresident defendant has

purposefully engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476.

In *Johansson*, 304 F.Supp.2d at 705, Judge Blake set forth the relevant considerations for analyzing minimum contacts in the context of a contract dispute involving an out-of-state defendant:

> The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000). Among the specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity*, 93 F.Supp.2d at 626 (internal quotation omitted). One of the most important factors

is "whether the defendant initiated the business relationship in some way." *See id.* at 626-27 (quoting *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986)). Ultimately, the question is whether the contract had a "substantial connection" to the forum state. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir.2000).

Plaintiffs have established a *prima facie* case for this court's exercise of specific jurisdiction over Defendant. Although there is a disagreement as to which party proposed the business relationship, for present purposes, the court must resolve all factual disputes supported by competent evidence in favor of Plaintiffs. *See Mylan Labs.*, 2 F.3d at 60. The affidavit of American Bank President and CEO James Plack recites that Defendant solicited an offer from Plaintiffs, through KBW, its agent, by first contacting Mr. Plack by telephone and then sending him a confidential sales memorandum, which provided detailed information about Grange Bank and invited further contact with Defendant.[1] Mr. Plack further avers that after this initial contact he worked directly with Michael McMennamin, a Grange consultant, through a series of telephone and email communications, to develop a proposal that was satisfactory to Grange. Thus, Grange "courted" a business relationship with

---

[1] This is unlike general advertising for many buyers of a product.

10

American Bank, *Mun. Mortgage & Equity*, 93 F.Supp.2d at 627, a factor which strongly militates in favor of this court exercising specific jurisdiction over Defendant. *See CoStar Realty Information, Inc. v. Meissner*, 604 F.Supp.2d 757, 766 (D.Md. 2009) (the "essential factor in determining whether business transactions give rise to specific jurisdiction is whether the defendant initiated the contact"); *Nueva Eng'g, Inc. v. Accurate Electronics, Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986) (noting that the Fourth Circuit "seems to have adopted the determination of whether the defendant initiated the business relationship in some way as a dispositive factor").[2]

It is undisputed that throughout the subsequent negotiations no Grange representative ever set foot in Maryland, while American Bank representatives traveled to Ohio on at least two occasions; however, that fact alone is not dispositive. "[A] nonresident who has never entered the state, either personally or through an agent, may be deemed to have

_____

[2] Defendant cites *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997), for the proposition that marketing efforts directed at potential buyers throughout the United States is not sufficient to support personal jurisdiction. In that case, however, the court was applying general, not specific, jurisdiction principles and determining whether the contacts were "continuous and systematic." While not necessarily dispositive when other factors strongly weigh against jurisdiction, initiation of contact remains a relevant factor. *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009).

'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 141 (D.Md. 1981); *see also Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992). Indeed, the merger agreement specifies that it "may be executed in counterparts" (paper 1, attach. 2, at ¶ 9.6), and the fact that the closing occurred in Ohio is not particularly compelling in light of the fact that the agreement contemplates the merger of the Ohio bank into the surviving Maryland bank, with American Bank assuming all of Grange Bank's deposit liabilities and indemnifying Grange for associated losses. It is uncontroverted, moreover, that all of Grange Bank's files were subsequently transferred to American Bank in Maryland, where they are presently housed, and that Grange Bank transferred large sums of money to Maryland accounts in consideration of American Bank's assumption of its liabilities. Under these facts, there can be little doubt that Defendant has transacted business in Maryland within the meaning of Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), and that this court's exercise of personal jurisdiction over Defendant is constitutionally reasonable. Because the court finds that Plaintiffs have established a *prima facie* case for the exercise of specific jurisdiction over Defendant, Defendant's motion to dismiss for lack of personal jurisdiction will be denied.

**B.    Venue**

Defendant additionally moves to dismiss for improper venue, pursuant to Fed.R.Civ.P. 12(b)(3), or to transfer under 28 U.S.C. § 1406(a).  In this circuit, when venue is challenged by a motion to dismiss, the plaintiff must establish that venue is proper:

> The burden of showing that the court has personal jurisdiction lies with the plaintiff, *see*, *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), as does the burden of showing that venue is proper. *See*, *Bartholomew v. Virginia Chiropractors Association*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).

*Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F.Supp.2d 468, 471 (D.Md. 2002).  Furthermore, "in deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F.Supp.2d 450, 454 (D.Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F.Supp. 381, 385 (D.Md. 1990)).

Venue for this diversity action is governed by 28 U.S.C. § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship

13

may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Pursuant to 28 U.S.C § 1391(c), "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." It follows that personal jurisdiction over the sole corporate defendant provides a proper basis for venue. *See The Rockefeller Univ. v. Ligand Pharmaceuticals*, 581 F.Supp.2d 461, 467 (S.D.N.Y. 2008).

Furthermore, both parties agree that venue can be proper if § 1391(a)(2) applies, *i.e.*, if "a substantial part of the events or omissions giving rise to the claim occurred" in Maryland. Defendant asserts that venue is improper for essentially the same reasons it argued the court did not have personal jurisdiction. Specifically, Defendant contends,

[T]here is no evidence that any, much less a substantial part of the events purportedly giving rise to American Bank's claims took place in Maryland. Negotiations did not

14

> occur in Maryland. . . . Grange did not
> execute the contract in Maryland. . . . The
> closing took place in Ohio, not Maryland. .
> . . Grange did not render its performance
> under the contract in Maryland. . . . All of
> these events occurred in Ohio. . . . Venue
> in Maryland is simply improper.

(Paper 8, at 12).

As noted, it is undisputed that the closing on the merger agreement took place in Ohio. On the other hand, the negotiations leading up to the merger agreement took place by email and telephone between parties in Maryland and Ohio; thus, they occurred in both states. Similarly, the contract was executed, in parts, in both states. Defendant's claim that Grange did not render performance under the contract in Maryland is misplaced considering that the agreement itself effected the merger of Grange Bank with a Maryland bank, the surviving entity, and that large sums of money, as well as voluminous accounts, files, and records, were transferred to this State as a result.

In addition to arguing that a substantial part of the events giving rise to their claim occurred in this district, Plaintiffs contend that the forum selection clause of the merger agreement constitutes a waiver of Defendant's venue challenge. The court need not address that claim, however, because the "same contacts with Maryland that support the district court's exercise of personal jurisdiction over [Defendant] also

provide[] a basis for venue there." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 318 (4th Cir. 2000). Accordingly, Defendant's motion to dismiss or to transfer for improper venue will be denied.

**III. Partial Motion to Strike Reply or to File a Surreply**

In its reply brief, Defendant argues, for the first time, that the case should be transferred pursuant to 28 U.S.C. § 1404. In response, Plaintiffs have moved to strike or to file a surreply. (Paper 11). Because Defendant is not eligible for relief under § 1404(a), the court will deny Plaintiff's motion and briefly address the claim.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "To prevail on a motion to change venue pursuant to § 1404, the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal marks and citation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002); *Dicken v. United States*, 862 F.Supp. 91, 92 (D.Md. 1994). In order to satisfy this burden, the defendant should submit "affidavits from witnesses and parties explaining the hardships

[it] would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002) (citing *Helsel*, 198 F.Supp.2d at 712). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion under § 1404(a). *See Dow*, 232 F.Supp.2d at 499; *Helsel*, 198 F.Supp.2d at 712.

Assuming, *arguendo*, that Defendant's motion to transfer under § 1404(a) is properly before the court, it cannot prevail because it consists solely of "[m]ere assertions of inconvenience or hardship," without any supporting affidavits or documentary evidence. Thus, Defendant has failed to carry its burden of showing that "the balance of convenience and the interest of justice [is] strongly in favor of the moving party." *Dow*, 232 F.Supp.2d at 499 (internal marks and citation omitted). Accordingly, insofar as relief is properly requested under § 1404(a), such relief will be denied.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss and Plaintiff's motion to strike or for leave to file a surreply will both be denied. A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge